**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **BRIAN ANDREWS,** | ) | |
| | ) | |
| Petitioner, | ) | **07 Civ. 3393 (KMK)(LMS)** |
| | ) | |
| *- against -* | ) | |
| | ) | **REPORT AND** |
| **LUCIEN J. LECLAIRE, Commissioner,** | ) | **RECOMMENDATION** |
| **New York State Department of Corrections** | ) | |
| | ) | |
| Respondent. | ) | |

_____)

**TO:   THE HONORABLE KENNETH M. KARAS,**
**UNITED STATES DISTRICT JUDGE**

Pro se petitioner, Brian Andrews ("Petitioner"), files this petition for a Writ of Habeas

Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction pursuant to

Westchester County Indictment Number 03-00387 for two counts of Criminal Sale of a

Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39) and two counts of Criminal

Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16). Pet. at 1.

On October 23, 2003, Petitioner was sentenced in the County Court of Westchester as a second

felony offender to a term of five to ten years imprisonment for each count, to run concurrently.

Aff. in Opp. to Pet. at 8. Petitioner was incarcerated for these offenses at the Queensboro

Correctional Facility but was released on parole on March 28, 2007. However, Petitioner is

currently incarcerated at the Westchester County Jail on pending charges of one count of

Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39) and one

count of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law

§ 220.03), both of which are also a violation of his parole conditions.[1]

Petitioner seeks habeas relief on six grounds: (1) that the trial court's pre-voir dire discussion of the elements of the crimes charged violated his right to a jury trial and due process; (2) that the trial court's refusal to allow defense counsel to inquire as to whether prospective jurors could follow certain instructions was a violation of his right to an impartial jury; (3) that the trial court's ruling pursuant to a <u>Sandoval</u> hearing violated his Fifth Amendment rights; (4) that the denial of a <u>Wade</u> hearing violated his due process rights; (5) that the trial court's <u>Allen</u> charge was coercive and violated his right to a jury trial; and (6) that the bolstering of eyewitness testimony by the People at trial violated his right to a fair trial.  Pet. at 5.  Respondent argues that the instant Petition should be denied in its entirety because Petitioner's claims are either procedurally barred or are without merit.  <u>See generally</u> Resp't Mem. of Law.  For the reasons set forth below, I conclude, and I respectfully recommend that Your Honor should conclude, that this Petition for a Writ of Habeas Corpus should be denied.

I.     **BACKGROUND**

A.     **The Crimes**

On January 22, 2003, Petitioner approached undercover police officer Anthony Maggiore of the Yonkers Police Department in the area of 56 Locust Hill Avenue and told him that he could get him some "Scooby Doo," a street name for heroin.  Aff. in Opp. to Pet. at 3.  Officer Maggiore told Petitioner that he would get back to him.  <u>Id</u>.  After conferring with his superiors,

---

[1]This information was derived by accessing the public internet inmate look-up system of the Westchester County Jail at http://www.westchestergov.com/jailpublic/webpages/bkgdetail.asp?bid=177603&oid=13810&bkg=2009008039, accessed 2/2/2010, and by speaking with Petitioner's parole officer, PO Theo DelToro at 914-654-8770 on 2/2/2010.

Officer Maggiore returned to the area where Petitioner had approached him earlier in order to make a drug buy.  Id.  Officer Maggiore stood in front of the door of 56 Locust Hill Avenue and was approached by an unknown individual who asked him what he wanted.  Aff. in Opp. to Pet. at 4.  Officer Maggiore stated that he wanted "Scooby Doo," whereupon the individual retreated into the lobby of the building.  Id.  Seconds later, Petitioner came to the doorway and told Officer Maggiore that he could get him one bag of "Scooby Doo" for ten dollars.  Id.  Officer Maggiore agreed, handed Petitioner ten dollars, and Petitioner handed Officer Maggiore a glassine envelope containing heroin.  Id.

The next day, January 23, 2003, Officer Maggiore returned to the area of 56 Locust Hill Avenue and saw Petitioner standing in the lobby with three or four other individuals.  Aff. in Opp. to Pet. at 5.  When Officer Maggiore approached, Petitioner asked, "How many?" and Officer Maggiore responded, "Just one bag."  Aff. in Opp. to Pet. at 6.  Petitioner stepped back into the building and returned with a glassine envelope that contained heroin and handed it to Officer Maggiore for a payment of ten dollars.  Id.  Officer Maggiore continued to purchase heroin at the Locust Hill location over the next two weeks, although from individuals other than Petitioner.  Id.  On February 12, 2003, Petitioner was arrested at the Gospel Mission on North Broadway in Yonkers where he was living.  Aff. in Opp. to Pet. at 7.  Although purportedly homeless, Petitioner was in possession of one hundred forty-nine dollars when arrested.  Id.

**B.    Procedural History**

On March 28, 2003, Petitioner was indicted in Westchester County, indictment number 03-00387, for two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39), two counts of Criminal Possession of a Controlled Substance in the Third

3

Degree (N.Y. Penal Law § 220.16), and two counts of Criminal Possession of a Controlled

Substance in the Seventh Degree (N.Y. Penal Law § 220.03).  Aff. in Opp. to Pet. at 8.  On

August 29, 2003, after a jury trial, Petitioner was found guilty of two counts of Criminal Sale of a

Controlled Substance in the Third Degree and two counts of Criminal Possession of a Controlled

Substance in the Third Degree.  Id.  Petitioner was sentenced to five to ten years for each count,

to run concurrently.  Id.

    Petitioner appealed to the Supreme Court, Appellate Division, Second Department

making the same six arguments contained in the instant habeas corpus petition.  See generally

Resp't Ex. 2, Resp't Ex. 5.  The Appellate Division affirmed Petitioner's conviction on June 6,

2006.  People v. Andrews, 30 A.D. 3d 434.  The New York State Court of Appeals denied

Petitioner leave to appeal on November 20, 2006.  Resp't Ex. 8.  Petitioner did not file any other

post-judgment motions other than the instant habeas petition which was timely filed on March 6,

2007.

## II.    DISCUSSION

### A.    Standard of Review

    "Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

4

federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered

5

"presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period

ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

     **B.**     **Petitioner's Claims**

          **1.**     ***The Trial Court's Pre-Voir Dire Instructions on the Elements of the Crimes Charged Do Not Rise to the Level of a Constitutional Violation.***

Petitioner contends that his due process rights were violated when the trial court specified the elements of the crimes charged and their definitions during jury selection.  Pet. at 5. Petitioner claims that charging the jury with the elements of the crime during voir dire, instead of after summations when such a charge is generally given, creates the danger that the jury will prematurely deliberate.  Id.  Respondent makes the argument that Petitioner's claim does not rise to the level of a constitutional violation because such a pre-voir dire instruction does not violate any state or federal law.  Resp't Mem. of Law at 1-6.  Respondent also contends that such instruction was countered by numerous admonitions by the court not to deliberate during the

course of the trial and, thus, Petitioner was not prejudiced.  Resp't Mem. of Law at 5.

In this case, the presiding trial judge was a participant in "The Jury Trial Project," a New York State Unified Court System initiative that experimented with innovative jury trial practices. Resp't Mem. of Law at 1, note 1.  Along with an explanation of the standard legal principles that are described in any voir dire, such as burden of proof, the judge also described for prospective jurors the elements of the crimes charged.  JS: 27-31[2].  The People claim in their appellate brief that the judge explained to the parties that this was one of the practices recommended by "The Jury Trial Project" and asked if there was any objection.  Resp't Ex. 3 at 10, note 1.  The People also claim that defense counsel expressly consented to the proposed instructions but defense counsel does not admit to this and it is not included in the record.  Id.

"Federal habeas relief 'does not lie for errors of state law.' "  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).[3]  In other words, ". . .a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, for Petitioner to sustain his cause of action, he must show that any error of state law – such as improper jury instructions –  " 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his constitutional due process rights."  Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).

---

[2]Hereinafter, "JS" refers to the transcripts of the jury selection.

[3]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with only WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

Petitioner has not met his burden of showing that the allegedly improper instructions given by the judge rise to the level of a constitutional violation.  Providing prospective jurors with an outline of the elements of the crime is not improper under state law.  Although the New York State Appellate Division, Second Department, had previously held that such instructions were improper (See e.g. People v. Mollica, 267 A.D. 2d 479 (2d Dept. 1999); People v. Davis, 12 A.D. 3d 456 (2d Dept. 2004)), this holding has been explicitly overruled.  In People v. Harper, 32 A.D. 3d 16, 18 (2d Dept. 2006), the court stated that "[c]urrent studies, particularly those conducted as part of the Jury Trial Project of the New York State Unified Court System, have demonstrated the benefits of substantive preliminary instructions."  The court went on to explicitly state that "the rule we enunciated in People v. Mollica is no longer to be followed and that it is not an abuse of discretion per se for the trial court to give preliminary instructions outlining the elements of the crimes."  Harper, 32 A.D. 3d at 20.  Therefore, Petitioner's reliance on People v. Davis is misplaced and such instruction does not violate state law.[4]

Even if the judge's pre-voir dire instructions had violated state law, such a violation does not rise to the level of a federal constitutional deprivation.  The Second Circuit held in United States ex rel. Joel Smith v. Montanye that a "jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right."  Smith v. Montanye, 505 F.2d 1355, 1359 (2d Cir. 1974).  The Supreme Court addressed this very issue in Cupp v. Naughten and reiterated "the well established proposition that a single instruction to a jury may

_____

[4]Although Harper had not been decided at the time of Petitioner's trial, the analysis remains the same because, as set forth infra, any such violation did not deprive Petitioner of any federal right.

9

not be judged in artificial isolation, but must be viewed in the context of the overall charge."

Cupp v. Naughten, 414 U.S. 141, 146-7 (1973).  The Court recognized that even if there was an

improper instruction given by the judge, the jury charge is but one of many components of a trial

that may result in a conviction and an improper charge alone does not per se violate due process.

Cupp, 414 U.S. at 147.  The Court goes on in Cupp to note that the trial court twice gave further

instructions clarifying the proper legal principle – in that case, the burden of proof – and that this

counterbalanced any prejudice that might have resulted from the improper charge.  Id.

In the instant case, the court repeatedly told the jury to "keep an open mind" and not to

deliberate prematurely.  T: 626, 738.[5]  After both sides had presented their case, the court again

charged the jury on the elements of the crimes as well as the other applicable law.  T: 783.  Thus,

no prejudice resulted from presenting the elements of the crimes charged in the pre-voir dire

instructions.  Since such instructions do not rise to the level of a constitutional deprivation,

Petitioner's first claim must be dismissed.

> **2.**    ***Petitioner's Claim That Defense Counsel Was Not Permitted to Question Prospective Jurors on a Particular Issue During Voir Dire is Procedurally Barred.***

Petitioner's second claim also revolves around the voir dire questioning of prospective

jurors.  Petitioner claims that defense counsel was not allowed to inquire fully into whether

members of the jury pool could follow the general principles of law.  Respondent contends that

defense counsel did not object to the judge's ruling at trial and, thus, the issue was unpreserved

for review.  Respondent further argues that the Appellate Division dismissed this claim upon

_____

[5]Hereinafter, "T" refers to the trial transcript.

review as unpreserved and this constitutes an independent and adequate state ground for dismissal, barring federal habeas review of the matter.

Although a petitioner's claim in a habeas petition may have merit, the claim may be procedurally barred from review by a federal court if a state court has decided the issue on "adequate and independent state grounds."  Harris v. Reed, 489 U.S. 255, 260 (1989).  In other words, ". . . an adequate and independent finding of a procedural default [by a state court] will bar federal habeas review of the federal claim. . .."  Harris, 489 U.S. at 262.

During voir dire, defense counsel explained the presumption of innocence and the burden of proof and asked the prospective jurors if anyone would have difficulty applying these legal principles.  T: 243.  There were no negative responses.  Id.  Defense counsel then tried to follow up this question with anecdotal remarks and the court would not allow this.  T: 243-4.  Defense counsel made no objection and moved on to another line of questioning.  Id.

Defense counsel then brought this issue up on appeal.  Resp't Ex. 2 at 19-24.  The Appellate Division addressed each of Petitioner's claims specifically in its Decision and Order of June 6, 2006, except Petitioner's claim regarding defense counsel's voir dire questioning.  People v. Andrews, 30 A.D. 3d 434.  However, at the close of its Decision and Order, the court noted that "[t]he defendant's remaining contention is unpreserved for appellate review."  Id.  As this was the only matter not specifically addressed in the Decision and Order, by process of elimination, it must be concluded that the Appellate Division found that this issue was unpreserved and dismissed it due to this procedural default.  Such a procedural default is an independent and adequate state ground for denial of a claim on habeas review and, therefore, precludes a federal court from reviewing the matter.  However, a Petitioner can overcome such a

procedural default if he or she can show "cause for the procedural default and prejudice attributable thereto" (Id.) or "actual innocence" (Schlup v. Delo, 513 U.S. 298 (1995)). Petitioner in this case has provided no proof of either cause and prejudice or actual innocence and, therefore, his claim must be dismissed.

>    **3.**    ***Petitioner's Claim That His Fifth Amendment Rights Were Violated by the Trial Court's Sandoval Ruling is Moot Because Petitioner Never Testified.***

Petitioner argues that the trial court's decision in the Sandoval hearing to allow the prosecution to question him regarding numerous prior convictions if he should testify violated his Fifth Amendment right against self-incrimination.  Pet. at 5.  Petitioner claims that the sheer number of convictions that the court deemed appropriate for questioning – twenty-two, in all – was more than was necessary for the jury to be able to assess his credibility.  Resp't Ex. 2 at 37. Respondent argues that any challenge to the Sandoval ruling is moot if the defendant chooses not to testify, as Petitioner chose to do in this case.

The Supreme Court has held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."  Luce v. United States, 469 U.S. 38, 43 (1984).  Although Luce's holding was in reference to an in limine ruling by a district court pursuant to Rule 609(a) of the Federal Rules of Evidence, its theory has been applied numerous times to claims regarding Sandoval rulings since "both procedures involve a pre-trial hearing on the admissibility of a defendant's prior convictions for impeachment purposes, and both procedures involve a weighing of the prejudicial impact of the convictions against the interest in impeachment of testimony."  Nieves-Delgado v. People, No. 00 Civ. 1397 (LTS), 2003 WL 21310815 at *2 (S.D.N.Y. June 9, 2003).  Therefore, "where, as here, a defendant has not

testified, a reviewing habeas court has no way effectively to evaluate a challenge to a <u>Sandoval</u> ruling." <u>Butler v. Graham</u>, No. 07 Civ. 6586 (JSR), 2008 WL 2388740 at *2 (S.D.N.Y. June 12, 2008); <u>See also</u> <u>Carroll v. Hoke</u>, 695 F. Supp. 1435 (E.D.N.Y. 1988), <u>aff'd</u>, 880 F.2d 1381 (2d Cir. 1989); <u>Underwood v. Kelly</u>, 692 F. Supp. 146 (E.D.N.Y. 1988), <u>aff'd</u>, 875 F.2d 857 (2d Cir. 1989). "Second Circuit law has created a bright line rule. . . barring habeas relief for allegedly erroneous <u>Sandoval</u> rulings in instances where a defendant elects not to testify." <u>Shannon v. Senkowski</u>, No. 00 Civ. 2865 (NRB), 2000 WL 1683448 at *6 (S.D.N.Y. Nov. 9, 2000). Because Petitioner did not testify at trial, his habeas claim regarding the <u>Sandoval</u> issue must be dismissed.

**4.** ***Petitioner's Claim That His Due Process Rights Were Violated by the Denial of a Wade Hearing Does Not Rise to the Level of a Constitutional Violation.***

Petitioner claims that his due process rights were violated when the trial court denied him a <u>Wade</u> hearing[6] regarding Officer Maggiore's identification of Petitioner from a photograph shown to him by another police officer. Pet. at 5. Respondent contends that Officer Maggiore's identification was merely confirmatory; that this issue does not rise to the level of a constitutional violation; and that the court did, indeed, hold a <u>Wade</u> hearing on this issue even if it did not identify it as such. Resp't Mem. of Law at 21.

As noted previously, errors by the court on issues of state law are not reviewable by federal courts in a habeas petition. ("It is not the province of a federal habeas court to reexamine state court determinations on state law questions." <u>Estelle</u>, 502 U.S. at 67.) The decision by a

---

[6]The purpose of a <u>Wade</u> hearing is to determine before trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification. <u>See</u> <u>United States v. Wade</u>, 388 U.S. 218 (1967).

state court as to whether there is sufficient evidence to warrant a <u>Wade</u> hearing is a question controlled by state law.  ("Insofar as this [the denial of a <u>Wade</u> hearing] is a matter of state law, the general rule is that it is not reviewable on a habeas petition."  <u>Garcia v. Kuhlmann</u>, 897 F. Supp. 728, 731 (S.D.N.Y. 1995)).  Thus, Petitioner's claim that he was denied a Wade hearing is a matter of state law and not reviewable by this federal court.

However, a petitioner can claim that a violation of state law is so egregious that it rises to the level of a constitutional deprivation.  Therefore, for Petitioner to sustain his cause of action, he must show that any error of state law – such as the denial of a <u>Wade</u> hearing – " 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his constitutional due process rights."  <u>Herring v. Meachum</u>, 11 F.3d 374, 377 (2d Cir.1993) (quoting <u>Tribbitt v. Wainwright</u>, 540 F.2d 840 (5th Cir. 1976).  Petitioner may also show a violation of due process if the issue in question – again, the denial of a <u>Wade</u> hearing – created "actual prejudice result[ing] from the events as they unfolded during the joint trial."  <u>Herring</u>, 11 F.3d at 378.

Petitioner offers no evidence in his habeas petition either that the trial was unfair or that actual prejudice resulted from the denial of a <u>Wade</u> hearing.  <u>See generally</u> Pet. at 5.  Upon review of the record, this court finds that the trial court took Petitioner's request for a <u>Wade</u> hearing under consideration several different times – once, before trial, ruling that a <u>Wade</u> hearing was unnecessary as the identification by Officer Maggiore was simply confirmatory; again, immediately before trial, when the judge affirmed the previous ruling; and a third time, during jury selection, when the court held a hearing on Officer Maggiore's pre-trial identification.  JS: 2-3, 21, 15-21; T: 126-127.  At the hearing, the court ruled that there was no suggestiveness in the identification procedure and that Officer Maggiore could proceed to testify.

14

T: 480.  This illustrates the seriousness with which the court took the issue of a <u>Wade</u> hearing and how fairly the matter was handled.  Additionally, because Officer Maggiore testified at trial, defense counsel had an opportunity to cross examine him regarding the issue.  ("Federal constitutional law does not warrant granting a habeas petition on the basis of denial of a pre-trial hearing where Petitioner had the opportunity to cross-examine the witness on the identification issue and to argue in summation that there might have been a problem with the identification procedure."  <u>Garcia</u>, 897 F. Supp. at 730-1.)  Therefore, Petitioner's fourth claim must be dismissed.

### 5.   *Petitioner's Claim That the Second Allen Charge Was Coercive Is Without Merit.*

  Petitioner claims that the second <u>Allen</u> charge given by the trial judge which encouraged the jury to reach a verdict was coercive and violated his due process rights.  Pet. at 5.  Respondent contends that there was only one <u>Allen</u> charge and it was not coercive.  Resp't Mem. of Law at 26-31.

A review of the record shows that although the jury sent out two separate notes stating that they could not reach a verdict, an <u>Allen</u> charge was given only after the second note was received by the court.  T: 845, 871, 874.  After the first note was received, the court dismissed the jury for the day with instructions that they would be asked to resume deliberations in the morning.  T: 845.  After the second note was received on the second day, the court then gave an <u>Allen</u> charge which asked the jury to "continue your efforts to reach a verdict" and to "[t]ry to reach a conclusion consistent with your conscience."  T: 874.

An <u>Allen</u> charge is an instruction by the court to a deadlocked jury that urges them to

15

continue deliberating and speaks specifically to the members of the minority in encouraging them to consider whether their views are reasonable in light of the majority's opinion.  See generally Allen v. United States, 164 U.S. 492 (1896).  The Supreme Court has held that, because of the potential coercive effects of an Allen charge, such instruction should be evaluated "in its context and under all the circumstances."  Lowenfield v. Phelps, 484 U.S. 231 (1988).  The Second Circuit has gone one step further and has encouraged judges to include cautionary language within an Allen charge that "admonish[es] the jurors not to surrender their own conscientiously held beliefs."  Smalls v. Batista, 191 F.3d 272, 279 (2d Cir. 1999).[7]

"[T]he mere giving of [an Allen] charge raises no claim cognizable in federal habeas corpus."  Graham v. Harris, 452 F. Supp. 137 (S.D.N.Y. 1978).  Therefore, in order for Petitioner to sustain a claim that the charge violated due process, he must show that the claim was, in some manner, coercive.  In this case, the wording of the court's Allen charge both instructed the jurors to "harmonize their views" and "to continue [their] efforts to reach a verdict" while still "reach[ing] a conclusion consistent with [their] conscience."   T: 874.  This falls within the standard language of a constitutionally acceptable Allen charge, even including the cautionary language encouraged by the Second Circuit.

Petitioner, however, claims that the constitutional violation occurred because this was a second or repeated Allen charge.  Pet. at 5.  This is not upheld by the record.  The court

_____

[7]It should be noted that the Second Circuit, in Spears v. Greiner, 459 F.3d 200 (2d Cir. 2006), held that the cautionary language of Smalls did not constitute a new rule in order to show a lack of coercion and that the standard in Lowenfield – that of evaluation "in its context and under all the circumstances" – still remained.  The Second Circuit has simply held that when a court asks minority jurors to consider the majority's views, "specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required."  Spears, 459 F.3d at 205.

dismissed the jury for the day after their first note that they were unable to "come to a unanimous verdict" and sought advice as to "how to proceed."  T: 845.  The judge did not issue a full blown Allen charge at this point but merely dismissed the jury for the day, advising them that they would be asked to resume deliberations in the morning.  Id.  Thus, the only Allen charge issued in this case was after the court received a second note from the jury and the judge instructed them to "make every effort to harmonize their views."  T: 874.

Even if the court had issued two separate Allen charges on two separate occasions, this is not necessarily coercive.  In Graham, the court held that issuing two Allen charges was not coercive and the standard of whether there was coercion or not still needed to be evaluated under the Lowenfield rule.  Graham, 452 F. Supp. at 140.  In this case, the context and circumstances surrounding the alleged giving of two Allen charges in no way indicates coercion.  Simple timing led the court to dismiss the jury at the end of the day after their first note was received.  Additionally, the wording of the second note from the jury – "The jury cannot come to a unanimous decision. Please advise how to proceed." – evidences a willingness to take the court's advice to continue on, if required.  T: 871.  Thus, there was no coercion present in the Allen charge given to the jury and Petitioner's fifth claim must be dismissed.

**6. _Petitioner's Claim That the Pre-Trial Photo Identification by Office Maggiore Violated his Due Process Rights is Without Merit._**

Petitioner claims that his due process rights were violated when Respondent allegedly bolstered the pre-trial identification during trial in violation of the state law rule handed down in People v. Caserta, 19 N.Y.2d 18 (1966).  Pet. at 4.  Respondent claims that whatever bolstering occurred was proper under New York State law and that such bolstering does not rise to the level

of a constitutional violation.  Resp't Mem. of Law at 33-37.

Petitioner's claim that Respondent violated the rule in Caserta is without merit. According to trial transcripts, Petitioner's counsel was the first to bring up the pre-trial identification in the cross examination testimony of Officer Maggiore, ostensibly to establish a defense that Petitioner had been targeted.  T: 719.  Under established New York State law, this "opens the door" and allows the People to question witnesses regarding such pre-trial identification.  See People v. Bolden, 58 N.Y.2d 741 (1982); People v. Sanders, 224 A.D.2d 556 (2nd Dept. 1996).  Thus, the alleged bolstering by Respondent does not violate the rule in Caserta.

Even if the alleged error was, in fact, proven by Petitioner, "[f]ederal habeas relief 'does not lie for errors of state law.' "  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)); "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle, 502 U.S. at 67).  Thus, Petitioner must show that the error was one that rises to the level of a constitutional violation.  Petitioner merely claims in his petition that such bolstering is "a violation of the right to a fair trial under the federal constitution" yet he provides no justification for such a claim.  Pet. at 4.

It is well settled that a suggestive identification procedure does not, in itself, intrude upon a constitutionally protected interest.  See Manson v. Brathwaite, 432 U.S. 98, (1977).  A "totality of the circumstances" analysis is commonly used to determine if the pre-trial identification error was one that so infected the trial that it violated due process.  Id.  Here, even if the pre-trial identification by a single photo was suspect, Officer Maggiore had more than ample opportunity, in good lighting and for reasonably long periods of time, to view Petitioner and, thus, his in court

identification was valid.  (See Manson, 432 U.S. at 114-117 where the court determined that there did not, under a totality of the circumstances, exist a substantial liklihood of irreparable misidentification, where the identification was made by a trained police officer who had sufficient opportunity to view the suspect and accurately described him.)  The Second Circuit has also weighed in directly on this issue, holding that "it is not improper to permit, as independent evidence of identity, the testimony of an extra-judicial identification, not only by the one making such identification, but also by others present at the time."  U. S. ex rel. Bryant v. Vincent, 373 F. Supp. 1180, 1184 (S.D.N.Y. 1974), citing United States v. Miller, 381 F.2d 529, 538 (2d Cir. 1967). Therefore, Petitioner's claim does not rise to the level of a constitutional violation and must be dismissed.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962)

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e),

or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file

written objections to this Report and Recommendation.  Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable

Kenneth M. Karas, at the United States District Court, Southern District of New York, United

States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of

the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: February 8, 2010
       White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Kenneth M. Karas, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

Brian Andrews
Westchester County Jail
P.O. Box 10
Valhalla, New York  10595

John J. Sergi

Westchester County District Attorney's Office
Westchester County Courthouse
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601